*Law Offices of Isaac Nutovic*
*Proposed counsel to Debtor and Debtor in Possession*
*261 Madison Avenue, 26th Floor*
*New York, N. Y. 10016*
*(917) 922-7963*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                        Chapter 11

       129 N WALNUT STREETL LLC,                       Case No. 22-

                                           Debtor.
-----------------------------------------------------------------x

## LOCAL RULE 1007- 4 DECLARATION

    **Samuel Rosenbaum**, declaring under penalty of perjury, pursuant to 28 U.S.C. §1746, says:

    1. I am the Managing Member of 129 N Walnut Street LLC (the "Debtor"), the above-named debtor and make this statement based on personal knowledge of the facts.

    2. I submit this declaration pursuant to E.D.N.Y. Local Rule 1007-4, and in support of the Debtor's voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code"), filed on April 8, 2022 (the "Filing Date").

    3. The Debtor is a limited liability corporation with its principal place of business located at 3611 14th Avenue, suite 551, Brooklyn, N.Y. 11218. The Debtor is not a small business within the meaning of section 101(51D) of the Bankruptcy Code; the Debtor is a single-asset debtor within the meaning of Bankruptcy Code § 101(51)(B).

### Background and Reasons for Filing

    4. The Debtor owns a residential building with 42 apartments located at 129 North Walnut Street, East Orange, NJ 07017 (the "Property").

    5. The Debtor acquired the Property from Yitzchokk LLC (the "Seller") by deed dated

November 19, 2021. The deed was recorded on December 17, 2021. The purchase price was $5,400,000. To finance the transaction and supplement my advances of more than $1,000,000, the Debtor obtained a loan from Basis Multifamily Capital LLC ("Basis") in the amount of $4,320,000. The loan was secured by a mortgage on the Property, an assignment of rents and a guaranty provided by me. an owner's title insurance policy for the Debtor and a mortgage insurance policy for Basis was issued by Old Republic National Title Insurance Company (the "Title Insurer").

6. Prior to the closing, Yitzchokk LLC (with two k's) had acquired the Property from Yitzchok LLC (with one k). The Property had been transferred by Yitzchok LLC to the Seller encumbered by a duly recorded mortgage in the principal amount of $3,650,000 in favor of New York Community Bank (the "NYCB Mortgage"). For reasons unknown, the Title Insurer's title search did not reveal the NYCB Mortgage, an error which underlies the issues prompting the commencement of this bankruptcy case.

7. At the closing of the transaction between the Debtor and the Seller, the NYCB Mortgage was not paid off and the entire purchase price monies were paid to the Seller. Upon information and belief, the Seller is refusing to return any portion of the purchase price paid.

8. After title was passed to the Debtor at the closing without its mortgage being paid off, NYCB commenced a foreclosure action against the Property. The Debtor subsequently asserted a claim against the Title Insurer. The Title Insurer conducted an investigation of the transaction (which included my sworn deposition) and then then paid the NYCB Mortgage but as a condition of doing so received an assignment of the NYCB Mortgage. In the course of the investigation two different operating agreements with different membership groups for the Seller were produced, suggesting the possibility that there could be later challenges to the authority of

the Seller's conveyance documents.

9. Accordingly, the Title Insurer has requested that the Debtor commence an action (the "Quiet Title Action") seeking a declaration that the Debtor is the proper owner of the Property free and clear of any claims by the Seller or the members identified in the operating agreement. The Title Insurer also retained the rights to the NYCB Mortgage to conduct a foreclosure of the Property in the event that the Quiet Title Action does not completely vindicate the Debtor's title to the Property. The Title Insurer has advised the Debtor that if the Quiet Title Action ends satisfactorily it will discharge/release the NYCB Mortgage. Through its counsel, the Debtor has been in close contact with the Title Insurer's legal representatives as to these issues.

10. In the meantime, the Debtor had also been in ongoing discussions with Basis keeping it abreast of developments. The Debtor's attorneys advised Basis of the strategy being employed to clear title and offered to seek an intercreditor agreement from the Title Insurer which would have the Title Insurer (i) subordinate the NYCB Mortgage to Basis' mortgage (apparently it made that offer directly to Basis), (ii) represent the NYCB Mortgage is being held only as protection in the event the Quiet Title Action did not end successfully and (iii) commit to releasing the NYCB Mortgage once the Quiet Title Action was successfully completed.

11. Although the Debtor had been making regular payments called for under the loan agreement with Basis. Even though the loan documents authorized a second mortgage on the Property, it appears that Basis, motivated by a substantial increase in interest rates from the time it had extended the loan in November, 2021, began pressuring the Debtor to refinance the Basis loan. When the Debtor refused, Basis sent a notice of default (the "Default Notice"). The Default Notice directed the Debtor to cease collecting rents and demanded payment prior to September 1, 2022 of the unpaid principal balance --$4,272,322.66-- in addition to alleged "Lender Costs"

of **1,846,775.48!**

12. The Debtor believes that, under the circumstances which were not caused by the Debtor, Basis sent the Default Notice in bad faith. The Title Insurer was willing to put the NYCB Mortgage into a second position behind the Basis mortgage and such an arrangement would have been authorized under the loan documents, provided Basis acted in good faith. The Debtor has filed this proceeding to prevent Basis from interfering with the Debtor's control of the Property and to reinstate the Basis loan upon its original terms.

## Exit Strategy.

13. The Debtor will file the Quiet Title Action promptly to vindicate its title rights. Once that action is completed successfully, the Title Insurer is expected to discharge/release the NYCB Mortgage. At that point the Debtor will be in a position to confirm a plan which leaves all creditors paid in full and unimpaired. Basis's loan will be reinstated and the claim rendered unimpaired by virtue of the provisions of 11 U.S.C. §1124.

## Assets and Liabilities

14. The Debtor's sole tangible asset is the Property which is encumbered by the Basis mortgage. The Debtor believes the Property has increased in value since its acquisition in November 2021 and that Basis's claim is adequately protected.

15. In addition to the Property, the Debtor has the following claims: (i) against the Title Insurer for any damages it suffers as a result of the failure of title (ii) against Basis for its bad faith calling of a default and demanding payment of bogus "Lender Costs" and (iii) against the Seller.

16. In addition to the Basis loan, the Debtor has miscellaneous trade debt from operating the Property, and debt owed to me for loans I have made to the Debtor.

**Miscellaneous**

17. No property of the Debtor is in the possession or custody and control of any public officer, receiver, trustee or assignee for the benefit of creditors, mortgagees, pledgees or assignees.

18. There is no current pending litigation against the Debtor.

19. No prepetition committee was formed by creditors of the Debtor.

20. Schedules are being filed along with the petition in this case.

21. The Debtor's equity is not publicly held.

22. The Debtor does not have any payroll obligations; no amounts are to be paid to any officers, insiders or consultants. The Debtor pays a management fee to a third-party management company.

September 1, 2022

/s/ Samuel Rosenbaum
_____
Samuel Rosenbaum, Managing Member