*Law Offices of Isaac Nutovic*
*Counsel to the Debtor and Debtor in Possession*
*261 Madison Avenue, 26th Floor*
*New York, New York 10016*
*(917) 922-7963*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re:

    129 N WALNUT STREET LLC,

                              Debtor.

Chapter 11
Case No. 22-42104-ess

------------------------------------------------------------------------x
129 N WALNUT STREET LLC,          Plaintiff

        vs.

RIVERSIDE ABSTRACT LLC,

                              Defendant

A.P. No. 23-   (ess)

------------------------------------------------------------------------x

## COMPLAINT

129 N Walnut Street LLC (the "Debtor") as its Complaint against Riverside Abstract LLC ("Riverside") alleges upon information and belief as follows:

### NATURE OF THIS ACTION

1. This action is being brought to recover damages from Riverside for its egregiously negligent or consciously fraudulent conduct in connection with the Debtor's acquisition of certain real property located at 129 N Walnut Street, East Orange New, Jersey (the "Property") in a transaction where Riverside failed to report a valid first mortgage on the Property held by New York Community Bank ("NYCB"). As a result, NYCB was not paid any proceeds from the acquisition of the Property and later instituted a foreclosure complaint. This caused the Debtor's lender to accelerate its loan and take steps to control the rents of the Property. The Debtor has incurred and will incur substantial costs responding to its lender and replacing its 30 year loan; the Debtor's title insurer is asserting that these damages are not insured by the title policy the Debtor

1

obtained in connection with the transaction.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b) and (e), as this matter arises in, under, and is related to a pending bankruptcy case. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O).

3.  Venue is proper in this District pursuant to 28 U.S.C. §1409.

## PARTIES

4.  The Debtor is a New York limited liability company, with an address at 3611 14th Avenue, Suite 551, Brooklyn, New York 11218.

5.  Defendant Riverside Abstract LLC is a limited liability company with an address at 212 2nd Street, Lakewood, New Jersey 08701.

## BACKGROUND FACTS

6.  Upon information and belief, in or about January 2016, Yitzchok LLC ("Yitzchok") acquired the Property for $1,890,000 and recorded a deed as owner of the Property.

7.  Upon information and belief, on or about June 15, 2016, Yitzchok obtained a $3,650,000 loan from NYCB and Yitzchok executed a mortgage on the Property (the "NYCB Mortgage"), an Assignment of Rents (the "NYCB Assignment of Rents") in favor of NYCB and a UCC-1 Financing Statement in favor of NYCB, (the "NYCB UCC") (collectively, the "NYCB Liens").

8.  In 2018, Yitzchok transferred the Property to Yitzchokk LLC ("Yitzchokk") subject to the NYCB Mortgage for $550,000 (the "2018 Transfer").

9.  Upon Information and belief, Yitzchok and Yitzchokk executed a letter agreement

dated May 25, 2018, with regard to the Property (the "Letter Agreement"), pursuant to which Yitzchok and Yitzchokk agreed that: (i) Benci Goldberger ("Goldberger") and Hirsch Nove ("Nove") had previously loaned Yitzchok and others $1,550,000, (ii) as part of the 2018 Transfer, the debt owed by Yitzchok to Goldberger and Nove would be deemed satisfied, (iii) Yitzchokk's ownership of the Property would be subject to the NYCB Mortgage, and (iv) Yitzchokk would be responsible for making the monthly payments on the NYCB Mortgage.

10. Upon information and belief, in connection with the 2018 Transfer, Yitzchokk obtained an owner's title insurance policy that listed the NYCB Liens as recorded encumbrances against title to the Property and therefore exceptions to coverage (the "2018 Policy").

11. Upon information and belief, in or around November 2019, Riverside conducted a title search on the Property on behalf of Yitzchokk (the "2019 Title Search"). Upon information and belief, Riverside conducted that search in connection with a loan and mortgage Yitzchokk sought from Envision Funded LLC ("Envision").

12. Upon information and belief, the 2019 Title Search disclosed the existence of the NYCB Liens as recorded encumbrances against the Property, as well as information stating that Yitzchokk had paid $550,000 for the Property (whereas its grantor, Yitzchok, had paid $1,890,000 for the Property).

13. Upon information and belief, Riverside issued a title insurance policy to Envision that failed to disclose or account for the NYCB Liens. Instead, the title insurance policy issued by Riverside to Envision insured Envision's mortgage as a first priority lien (the "Envision Mortgage") even though the 2019 Title Search revealed the priority of the NYCB Mortgage.

14. The Debtor acquired the Property from Yitzchokk LLC (the "Seller") by deed dated November 19, 2021.

15. In connection with the Debtor's acquisition of the Property (the "Debtor's Purchase Transaction"), the Debtor obtained a loan (the "Loan") from Basis Multifamily Capital LLC ("Basis Capital") in the amount of $4,320,000. The Loan, evidenced by a loan agreement and note, was secured by a mortgage (the "Basis Mortgage") on the Property and an assignment of rents (collectively, the "Loan Documents").

16. The Loan and Loan Documents were assigned to Basis Multifamily Finance LLC ("Basis Finance") on or about August 1, 2022.

17. In connection with the Debtor's Purchase Transaction, the Debtor applied for a title insurance policy through Riverside.

18. Upon information and belief, in or about October 2021, Riverside conducted another title search on the Property in connection with the Debtor's Purchase Transaction (the "2021 Title Search").

19. Upon information and belief, the 2021 Title Search again disclosed the NYCB Liens, as well as the liens to Envision, as liens against the Property.

20. Upon information and belief, Riverside thereafter produced a title commitment that omitted the NYCB Mortgage and NYCB Assignment of Rents but noted the NYCB UCC.

21. Upon information and belief, Yitzchokk's counsel asked that the NYCB UCC be removed.

22. Upon information and belief, Riverside complied with the request from Yitzchokk's counsel and removed the NYCB UCC, despite the fact that it was recorded against the Property.

23. Upon information and belief, Yitzchokk's counsel emailed the 2018 Policy to Riverside on November 4,2021, before the 2021 Debtor's Purchase. The 2018 Policy confirmed

that Yitzchokk had purchased the Property subject to the NYCB Liens.

24. Upon information and belief, by November 2021, Riverside knew from at least three sources that the NYCB Liens encumbered the Property.

25. Nevertheless, Riverside failed to disclose the NYCB Liens to the Debtor.

26. Riverside provided the Debtor with a title commitment which failed to identify the NYCB Mortgage as a lien on the Property even though, upon information and belief, Riverside had actual knowledge of such mortgage.

27. In connection with the Debtor's Purchase Transaction, the Debtor obtained an Owner's Title Insurance Policy ("Owner's Policy") and paid for a mortgage insurance policy (the "Mortgage Policy") in favor of Basis Capital. Neither policy included exceptions for, or any reference, to the NYCB Liens.

28. Both policies were procured by Riverside which also closed the Debtor's Purchase Transaction.

29. At the Debtor's Purchase Transaction closing, the Debtor paid the full purchase price as called for in the contract between the Debtor and the Seller, and the NYCB Liens were not disclosed, satisfied or discharged of record.

30. Upon information and belief, one or more representatives of Riverside worked in concert with Yitzchokk, to ensure that The Debtor were not aware of the NYCB Liens or any issues with the Property.

31. Upon information and belief, Yitzchokk asked Riverside to conceal from the Debtor

that a $150,000 payment would be made from the purchase price of the Property to an undisclosed party.

32. The settlement statement prepared by Riverside and provided to the Debtor in connection with the Debtor's Purchase Transaction represents that the Seller's net sales proceeds were wired to Yitzchokk as part of the transaction.

33. Upon information and belief, Riverside has produced documents in response to a subpoena duces tecum served in another action that reflect that the proceeds due to Yitchokk from the Debtor's Purchase Transaction– totaling over $4 million – were not paid to Yitzchokk as the seller of the Property but instead were wired to Hirsh Nove, a purported principal of Yitzchokk and a purported former creditor of Yitzchok.

34. Riverside did not disclose to the Debtor that the net proceeds of Debtor's Purchase Transaction were not being transmitted to Yitzchokk.

35. On or about March 4, 2022, NYCB commenced a foreclosure action (the "NYCB Foreclosure Action") against the Property in the Superior Court of New Jersey, Essex County, Chancery Division.

36. On August 1, 2022, Basis Finance sent a letter (the "Payment Demand") to the Debtor accelerating the Loan.

37. The Payment Demand also directed the Debtor to cease collection of rents from the Property.

38. The Payment Demand was sent by Basis Finance solely because of the existence of the NYCB Liens and the commencement of the NYCB Foreclosure Action.

39. In order to protect the Property from Basis Finance exercising its purported rights under the Loan documents, the Debtor was compelled to commence a chapter 11 bankruptcy proceeding thereby incurring substantial attorney's fees.

40. In responding to Basis Finance's reaction to the disclosure of the NYCB Liens and

the Foreclosure Action, the Debtor was forced to incur substantial attorneys' fees. In addition, the Debtor and its principal suffered reputational damage.

## COUNT I
### (Fraud and Fraudulent Inducement)

41. The Debtor repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

42. In connection with the Debtor's Purchase Transaction, Riverside made false representations to the Debtor that the Property was encumbered only by the Envision liens.

43. In connection with the Debtor's Purchase Transaction, Riverside made false representations to the Debtor that the proceeds of the Debtor's Purchase Transaction were being sent to Yitzchokk, and withheld the fact that those funds were being sent to Nove.

44. Upon information and belief, Riverside intended that the Debtor, among others, rely on its misrepresentations in order to close the Debtor's Purchase Transaction, to continue receiving business from Yitzchokk and its member(s), and/or to receive other benefits.

45. Had it known about any liens, either senior or junior, recorded against the Property at the time of the Loan, the Debtor would have required that the purchase monies be used to satisfy those encumbrances and have those liens removed from title.

46. The Debtor relied on Riverside's false representations to its detriment.

47. The Debtor is entitled to a judgment against Riverside in an amount to be determined at trial for all damages, costs and expenses suffered by the Debtor as a result of Riverside's fraudulent misrepresentations and conduct including any increase in its lending costs and attorneys' fees.

48. The Debtor is further entitled to punitive damages based on Riverside's egregious conduct.

## COUNT II
### (Consumer Fraud Act)

49. The Debtor repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

50. The Consumer Fraud Act prohibits "[t]he act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the Debtor's Purchase or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]"

51. Upon information and belief, Riverside, with the intent that the Debtor rely on this omission, knowingly concealed, suppressed, or omitted the fact that, at the time of the Debtor's Purchase Transaction, the NYCB Liens were still of record against the Propertyt

52. Riverside's knowing omissions made to The Debtor, as set forth above, violated the Consumer Fraud Act.

53. Riverside's unlawful conduct resulted in the NYCB Liens remaining on the Property after the Debtor obtained its mortgage from Basis Capital. The discovery of these liens was the proximate cause of the acceleration of the Loan as being in default.

54. As a direct result of Riverside's conduct described above, which was in violation of the Consumer Fraud Act, The Debtor has incurred, and continues to incur, ascertainable damages.

55. The Debtor is entitled to a judgment against Riverside in an amount to be determined at trial for all damages, costs and expenses suffered by the Debtor as a result of

Riverside's violation of the Consumer Fraud Act, including attorneys' fees, any increase in its lending costs and treble damages as provided by statute.

## COUNT III
### (Negligence)

56. The Debtor repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

57. Upon information and belief, Riverside does a significant amount of business with purchasers of real property.

58. Upon information and belief Riverside knew that most purchases of real property are financed with a mortgage lender and that such mortgage lenders typically do not allow other liens on the mortgaged property.

59. Upon information and belief Riverside was aware that the Debtor intended to fund its acquisition of the Property with a mortgage loan from Basis Capital.

60. The Debtor relied on Riverside to properly undertake an inspection of title to the Property and to identify all liens which appeared of record against the title to the Property.

61. Riverside knew that the Debtor were relying on Riverside to properly undertake an inspection of title to the Property and to identify all liens which appeared of record against the title to the Property.

62. The Debtor required an accurate report as to the existence of all recorded liens against the Property in order to have them satisfied at closing.

63. At all relevant times, Riverside knew that the Owner's Policy, which insured only defects to title subject to the exceptions and exclusions therein, was not sufficient to protect the Debtor' business interests and particularly its need to satisfy its mortgagee's requirement that the Property be free of all liens at the time of the Debtor's Purchase Transaction.

64. In connection with the Debtor's Purchase Transaction, Riverside undertook a duty to the Debtor to identify all liens on the Property,

65. Riverside breached its duty of care to the Debtor by failing to identify the existence of the NYCB Liens prior to the closing of the Debtor's Purchase Transaction.

66. By virtue of having procured the Owner's Policy and Mortgage Policy, Riverside knew that the Debtor had granted a first lien mortgage on the Property to secure the Loan.

67. Riverside's negligence failing to identify the existence of the NYCB Liens prior to the closing of the Debtor's Purchase Transaction caused damages to the Debtor that were beyond the coverage provided under the Owner's Policy

68. The Debtor is entitled to a judgment against Riverside in an amount to be determined at trial for all damages, costs and expenses suffered by the Debtor as a result of Riverside's negligence, including any amounts that the Debtor may required to pay to Basis Finance under the Loan Documents or otherwise and any diminution in the value of the Property.

WHEREFORE, for all the foregoing reasons, the Debtor respectfully requests:

(A) with respect to Count I, entry of a judgment against Riverside in an amount to be determined at trial, for all compensatory damages to the Debtor resulting from Riverside's wrongful conduct, punitive damages, costs and attorney's fees;

(B) with respect to Count II, entry of a judgment against Riverside in an amount to be determined at trial, for all compensatory damages to the Debtor resulting from Riverside's wrongful conduct, statutory treble damages, costs and attorney's fees; and

(C) with respect to Count III, entry of a judgment against Riverside in an amount to be determined at trial, for all compensatory damages to the Debtor resulting from Riverside's wrongful conduct, costs and attorney's fees; and

(D) with respect to all counts, awarding to the Debtor such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
      June 5, 2023

                                  LAW OFFICES OF ISAAC NUTOVIC
                                      Attorneys for the Debtor

                              By:    *s/Isaac Nutovic*
                                      Isaac Nutovic, Esq.
                                      261 Madison Avenue, 26th Floor
                                      New York, New York 10016
                                      (917) 922-7963